Juan Ramón Ruberté et al., Plaintiffs and Appellants, *v.*
The American Railroad Company of Puerto Rico, Defendant and Appellee.

No. 6846.  Argued June 7, 1937.—Decided July 31, 1937.

*Fernando B. Fornaris, R. Hernández Matos,* and *E. Huertas Zayas*
for appellants.  *Mariano Acosta Velarde* for appellee.

Mr. Justice Wolf delivered the opinion of the Court.

The Central Fortuna owns a railway track which connects
with the tracks of the American Railroad Company.  Both
the Central Fortuna and the American Railroad Company
do other business over the track belonging to the Central.
Fortuna.  This track crosses the highroad between Santa
Isabel and Ponce and the accident, or the facts leading up to
the accident in this case, all happened around the intersec-
tion of the said track with the highway between Santa Isabel
and Ponce.

On the day of the accident, the American Railroad had
sent a railway automobile over the track for some purpose

perhaps connected with the harvest of cane that would take place some time later. As it approached the insersection, the driver of the railway automobile saw a Graham Paige truck coming along the high-road from Ponce to Santa Isabel. The said driver, as believed by the court below, sounded his klaxon, reduced his speed and stopped as quickly as possible, but actually penetrated a short distance into the highroad between Santa Isabel and Ponce. It would appear that except for his vision of the Graham truck, the driver of the railway automobile would have acted as if he had a clear right of way. To the left of the viewpoint of the said driver the highroad from Santa Isabel to Ponce is obscured by trees and shrubbery. Everyone testified to the fact that a truck coming from Santa Isabel can not see the track to the right of them, and persons traveling on the track towards the intersections as was the railway automobile can not see vehicles coming from Santa Isabel.

Almost instantly with the stopping of the railway automobile it was struck by a Ford truck coming from Santa Isabel to Ponce. The impact of the truck was strong enough to carry the railway automobile off the track, a short distance toward Ponce. This collision or the possibility of this collision, the driver of the Graham truck saw when he was about ten meters or so away from the railway track. The testimony differs as to the speed at which the Graham truck was traveling, but the court below thought it was traveling at a high rate of speed. The driver of the Graham Paige truck thought that he would incur an accident if he continued on his way, therefore, he veered off sharply to his right to a side road, the truck turned over on its left side and killed Justo Ruberté, whose heirs and his father have brought the several actions before us. The suit brought is against the American Railroad Company and the District Court of Ponce rendered judgment for the defendant.

One of the assignments of error was that the defendant, the American Railroad Company, was bound to

preserve a guard or bars at the intersection of the railway track with the highway. In harvest time the Central Fortuna did maintain a guard there, but when there was no harvest no precaution of this kind was taken. There has been a good deal of discussion as to whether the American Railroad, when it ran trains or vehicles over the road, was not bound to maintain a guard of some kind. We do not find that the written law clearly imposes this duty on a railway company using a track that does not belong to it. Perhaps some kind of a duty arose in the American Railroad Company when it unexpectedly used the track, or perhaps some duty arose in the Central to maintain a guard when it knew its tracks were to be used. From the view that we take of this case, it is unnecessary to decide positively whether the American Rairoad was specifically bound by law to maintain a guard.

At this present writing we are not fully aware of the nature of the track held by the Central Fortuna. It probably makes no great difference as to the character in which the railway automobile belonging to the American Railroad occupied the tracks of the Central Fortuna. All over this Island there are tracks owned by corporations and private persons that are practically never used except in harvest time or the times immediately preceding or following it. A person traveling along a highway in a motor vehicle is not ordinarily obliged to take the same care when passing over one of these tracks as he would in crossing the regular tracks of the American Railroad Company. Travelers along the highroad are always bound to take a certain amount of care, but we do not think that they are bound to stop, look, and listen every time they approach a track, especially one not belonging to a public service corporation, apt to use its tracks at any moment. The intersection was a grade crossing. In other words, that travelers on the highroad, and of course those coming from Ponce, could see straight ahead for quite a distance.

■ Where guards for a fair part of the year are maintained, travelers on the highroad are not expected to take extraordinary care but only a reasonable amount of care. The evidence does not convince us that either the Graham truck or the Ford truck was going at a great rate of speed, or at a rate of speed that an ordinary prudent man would not have traveled.

■ The question arose whether the driver of the Graham truck acted in an emergency. Counsel for appellants conceded at the hearing that if the driver had kept on his way he probably could have passed over the track without anything happening to him. Nevertheless, we agree with the appellants that he had a right to believe that if he went on his way he might encounter serious difficulties, if not an actual collision. The appellee is not mistaken when it maintains that the American Railroad would be totally exonerated if without justification the driver of the Graham truck had turned to his right.

The evidence, as we have said, does not convince us that the driver of the Ford Truck was going at an excessive rate of speed. We are not convinced that he could have seen the railway automobile or even have heard its horn, assuming as we do, that the horn was sounded. We have had different impressions in this case, but in the final analysis we can not agree with the court that the actions of the two trucks, as separately analyzed by the court, were negligent.

Now, of course, the physical cause of the death of Justo Ruberté was the action of the Graham Paige truck, but the action of the driver of the Graham Paige was as innocent as the last man who pushed off the lighted squib in the famous case of *Scott* v. *Shepherd*, 2 W. Bl. 892. The accident was therefore necessarily due to the conduct of the Ford truck or the railway company, and we have exonerated the Ford truck.

Therefore, the question principally arises whether the railway automobile under the control of the American Railroad was guilty of negligence and we think it was. Under

the facts as outlined, the rights of the travelers along the highway between Santa Isabel and Ponce were greater than the rights of the railway automobile. We find nothing in the record to show that the railway automobile had a superior or even an equal right of way over the point of intersection. Travelers along the highroad have at this particular season of the year no duty to expect the advent of a railway automobile. On the other hand, the driver of the railway automobile was bound to know that he was to cross a road where there is much traffic. So much so that given the terrain flanked by bushes we think, in the absence of guards, it was the duty of the driver of the railway automobile to do whatever he could to avoid a collision, perhaps even to send a person ahead to act as a lookout.

The judgment should be reversed and instead thereof another rendered holding good the complaint and ordering the American Railroad Company to pay to the complainants jointly (*mancomunadamente*) the sum of $4,000.00 as damages, all without costs.

Mr. Justice Córdova Dávila took no part in the decision of this case.